[No. 12057. Department One. December 28, 1914.]

HARRY OCHS, *Appellant*, v. JOHN F. GREEN *et al.*,
*Respondents*.[1]

BANKS AND BANKING — STOCKHOLDERS — AGREEMENTS BETWEEN— SALE OF STOCK—CONDITIONS—PERFORMANCE OR BREACH. Where the principal owners of a bank, which they were about to sell, purchased the stock of a minority stockholder for $75 per share under an agreement to use their best efforts in settling up its affairs and to distribute to each share its proportion if more than $75 was realized per share, the principal owners are not liable on the theory that they received $106.05 per share, where it appears that they sold the bank at $100 per share "made sound," that the sale did not include the real estate or securities not approved of, and they were compelled to take back the real estate and certain securities not considered of full book value, the assets had depreciated, and there was a wide margin between the actual and book value, diligent efforts had been made to realize upon all the assets, the assets having been administered in good faith, and it is not at all likely that $75 per share will be realized by any one except the complaining minority stockholder who sold his stock, and who knew the situation and made no objections when statements were exhibited to him.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered August 21, 1913, upon findings

[1]Reported in 145 Pac. 82.

in favor of the defendants, in an action on contract, tried to the court. Affirmed.

*Merritt, Oswald & Merritt,* for appellant.

*Burcham & Blair,* for respondents.

Morris, J.—On June 10, 1910, appellant was the owner of sixty-seven shares of the capital stock of the Harrington State Bank, the remainder of the stock being owned and controlled by respondents, except forty shares owned by J. L. Ball. Respondents, at this time, owned another bank at Harrington known as the Bank of Harrington, and three other banks in that vicinity. The Harrington State Bank was a corporation organized under the banking laws of this state, while the Bank of Harrington was conducted as a partnership business of respondents. The Union Securities Company is a corporation whose business is to own and control various banks in Eastern Washington. Prior to June 10, the respondents and the Union Securities Company had entered into arrangements providing for the sale of the banks controlled by respondents to the Union Securities Company, which arrangements included the transfer to the Securities Company of the stock of the Harrington State Bank. In order to carry out this arrangement, it was necessary for respondents to obtain stock owned by appellant, and negotiations for its purchase were entered into, culminating in the following agreement:

"Harrington, Wash., June 10th, 1910.

"We, the undersigned, having purchased from Harry Ochs sixty-seven shares of the capital stock of The Harrington State Bank, and having paid for the same, in cash, the sum of seventy-five dollars per share, further agree to use our best efforts in settling up the affairs of the above named bank, and whatever is received over and above seventy-five dollars per share, we agree to distribute so that each share of stock will receive its proportion and agree to pay the said Harry Ochs

or his representatives the amount represented by the sixty-seven shares that we have purchased.    John F. Green,

"M. F. Adams,

"A. G. Mitchum."

The action is brought upon the theory that, in transferring the stock of the Harrington State Bank to the Securities Company, the respondents received $106.05 per share, and it is sought to recover the difference between this sum and $75 per share.

In order to ascertain the real value of the stock of the Harrington State Bank, as represented in its sale to the Securities Company, it is necessary to ascertain the terms under which it was purchased.  It appears that the purchase was represented by two contracts, the first of which is dated June 8 and the second June 13, 1910.  The first contract, in so far as it relates to the Harrington banks, provided that the stock of the Harrington State Bank was to be sold at $100 per share "made sound," but such sale was not to include its real estate or other assets except such as the Securities Company might elect to take, the furniture and fixtures of the Harrington State Bank to be taken at actual value, the real estate of the Bank of Harrington, its furniture and fixtures, to be taken at figures named in the agreement, and a bonus of $5,000 to be paid as the agreed value of its good will. By the second agreement the respondents bound themselves as guarantors of the book assets of the Harrington State Bank and agreed that, on or before January 1, 1911, they would repurchase at par with accrued interest such of the securities and assets of the Harrington State Bank shown on its books on June 13, 1910, including accounts, bills receivable and renewals, as the Securities Company should designate, and that they would "make good" in ten days after notice any inaccuracy discovered by the Securities Company in the books of the Harrington State Bank.   Under this agreement the Securities Company transferred to respondent all the real estate of the Harrington State Bank at the price at which it

had been valued in making up the book value of the stock, and required the respondents to take back at book value certain of the assets and securities of the bank that were not considered of full book value. It is evident—and the lower court has so found—that, at the time of the sale, the assets of the Harrington State Bank were depreciated and that there was a wide margin between the actual and book value, and because of this, a like margin between the actual and book value of the capital stock. The book value of the stock was readily ascertainable, but its real value depended upon the extent of the depreciation of the bank's assets and the amount and value thereof to be transferred to respondents under the sales contract. The book value of the real estate and fixtures transferred to respondents by the Securities Company under the sales contract was $15,000, and the book value of the other assets and securities taken over prior to January 1, 1911, aggregated $8,883.55. There is no showing that, in accepting these items at these figures, the respondents were actuated by other than the best business motives and an attempt to carry out their contract with the Securities Company and the appellant. The lower court has also found— and the facts sustain such finding—that the respondents had made diligent efforts to realize upon all assets of the Harrington State Bank retransferred to them by the Securities Company, and in so far as they were able have converted the same into cash for the best price obtainable, and in all things have administered these assets in good faith and for the joint benefit of all parties in interest. The facts, we think, demonstrate that the appellant knew the situation as between the Securities Company and respondents, as to the assets of the Harrington State Bank; that, at least on one occasion in the fall of 1911, the respondents exhibited to him a statement of the then condition of the assets of the bank, and that he was then agreeable to what had been done. The appellant has received $75 per share for his stock. Respondents have received less, and it is doubtful from the references made to the

present value of these retransferred securities if respondents ever will receive an amount equal to $75 per share for the stock owned by them.

We find no error in the findings of the lower court, and its judgment is affirmed.

CROW, C. J., GOSE, PARKER, and CHADWICK, JJ., concur.